**Appeal No. 2024-1537**

IN THE
# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

## Dura Systems Barriers, Inc.,

*Plaintiff-Appellee,*

## v.

## Van-Packer Co., Jeremias, Inc.

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Central District of Illinois
in Case No. 1:19-cv-01388-SLD-JDH, Judge Sara Darrow

---

## BRIEF FOR APPELLEE DURASYSTEMS BARRIERS, INC.

---

CHAD E. NYDEGGER
BRIAN N. PLATT
RYAN C. MORRIS
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
*Attorneys for Appellee DuraSystems Barriers, Inc.*

# <u>CERTIFICATE OF INTEREST</u>

The undersigned counsel certifies the following:

1. The full name of every party represented by the undersigned is:

   **DuraSystems Barriers, Inc.**

2. The real party in interest represented by the undersigned is:

   **DuraSystems Barriers, Inc.**

3. All parent companies and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

   **None**

4. The names of all law firms and the partners or associates that appeared for the party now represented by the undersigned below or are expected to appear in this court are:

   CHAD E. NYDEGGER
   BRIAN N. PLATT
   RYAN C. MORRIS
   WORKMAN NYDEGGER
   60 East South Temple, Suite 1000
   Salt Lake City, Utah 84111
   (801) 533-9800

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

   **None.**

DATED: JULY 3, 2024

*/s/ Chad E. Nydegger*
CHAD E. NYDEGGER

i

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES .................................................................. v

STATEMENT OF RELATED CASES .................................................. vii

INTRODUCTION .................................................................................1

COUNTERSTATEMENT OF THE ISSUES ........................................3

COUNTERSTATEMENT OF THE CASE ...........................................3

I.     BACKGROUND...........................................................................3

       A.     Technology of the '569 Patent................................................3

       B.     Relevant Prosecution History of the '569 Patent .........................8

       C.     Van-Packer's Claim Construction Arguments Below ...............12

       D.     The District Court's Construction...................................14

              1.     The district court analyzed "thermal spacers" to
                     require the spacers to themselves thermally isolate,
                     but need not do so via a particular thermal material
                     property .................................................................14

              2.     The district court found "thermally isolating" to
                     mean limiting heat transfer, rather than preventing it
                     entirely .................................................................16

              3.     The district court construed the phrase "thermal
                     spacers thermally isolating" .................................18

       E.     Van-Packer's Infringing Products................................19

       SUMMARY OF THE ARGUMENT...................................................22

II.    ARGUMENT ........................................................................25

    A.    Legal Standards ............................................................25

    B.    The District Court's Construction of "Thermal Spacers Thermally Isolating" Is Correct........................................26

        1.    The district court's construction stays true to the plain language of the claim ...................................26

        2.    The district court's construction is consistent with the prosecution history...........................................29

    C.    Van-Packer's Arguments that "Thermal Spacers" Must Be Construed Differently than "Thermal Spacers Thermally Isolating" Fail ....................................................................32

        1.    The district court's construction of "thermal spacers thermally isolating" does not render "thermal spacers" superfluous .............................................34

        2.    The district court properly found that prosecution disclaimer does not apply and its construction does not reclaim claim scope disclaimed during prosecution..................................................................37

        3.    *Intel Corporation v. Qualcom Inc.* is inapposite to the facts and circumstances of this case ....................................39

    D.    Van-Packer Waived Its Proposed "Specific Thermal Property" Construction of "Thermal Spacers" ...........................40

    E.    The district court did not alter its construction of "thermal spacers thermally isolating" when granting summary judgment of infringement ................................................42

    F.    The Court Properly Found that Van-Packer's Products Meet the "Thermal Spacers Thermally Isolating" Limitation ........................................................................46

1.      Van-Packer has waived any argument that its thermal spacers do not meet the district court's construction of "thermal spacers thermally isolating" ............................................................... 46

2.      The district court properly rejected Van-Packer's argument that the perforations in its thermal spacers are the separately claimed "voids" .................................... 47

G.      Reversal Is Not an Appropriate Appellate Remedy Because the District Court Has Not Considered Infringement under Van-Packer's Proposed Construction ....... 56

CONCLUSION ................................................................................... 59

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
   457 F.3d 1293 (Fed. Cir. 2006) ..........................................................25

*Cardsoft (assignment for the Benefit of Creditors), LLC v. Verifone, Inc.,*
   807 F.3d 1346 (Fed. Cir. 2015) ..........................................................26

*Comput. Docking Station Corp. v. Dell, Inc.,*
   519 F.3d 1366 (Fed. Cir. 2008) ..........................................................14

*Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.,*
   998 F.3d 917 (Fed. Cir. 2021) ............................................................59

*Harris Corp. v. Ericsson Inc.,*
   417 F.3d 1241 (Fed. Cir. 2005) ..........................................................41

*Home Diagnostics, Inc. v. LifeScan, Inc.,*
   381 F.3d 1352 (Fed. Cir. 2004) ..........................................................26

*Intel Corp. v. Qualcomm Inc.,*
   21 F.4th 801 (Fed. Cir. 2021) .......................................................39, 40

*Interactive Gift Exp., Inc. v. Compuserve Inc.,*
   256 F.3d 1323 (Fed. Cir. 2001) ...............................................24, 41, 43

*Key Pharms. v. Hercon Lab'ys Corp.,*
   161 F.3d 709 (Fed. Cir. 1998) .......................................................42, 43

*In re Lemay,*
   660 F. App'x 919 (Fed. Cir. 2016) ................................................59, 60

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) (en banc)................................*passim*

*Power Mosfet Techs. L.L.C. v. Siemens AG,*
  378 F.3d 1396 (Fed. Cir. 2004) ........................................................36

*Renishaw PLC v. Marposs Socita per Azioni,*
  158 F.3d 1243, 1250 (Fed. Cir. 1998) .......................................2, 4, 27

*Schindler Elevator Corp. v. Otis Elevator Co.,*
  593 F.3d 1275 (Fed. Cir. 2010) ...........................................15, 16, 17

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB,*
  820 F.3d 419 (Fed. Cir. 2016) ............................................................36

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
  299 F.3d 1313 (Fed. Cir. 2002) ..........................................................26

*United Cannabis Corp. v. Pure Hemp Collective Inc.,*
  66 F.4th 1362 (Fed. Cir. 2023) ..........................................................18

*University of Massachusetts v. L'Oreal S.A.,*
  36 F.4th 1374 (Fed. Cir. 2022) ..........................................................31

*VLSI Tech. LLC v. Intel Corp.,*
  53 F.4th 646 (Fed. Cir. 2022) ............................................................37

## STATEMENT OF RELATED CASES

A prior appeal from the proceeding below was previously before this Court as *DuraSystems Barriers, Inc. v. Van-Packer Co., Jeremias, Inc.*, No. 2023-1888, but was voluntarily dismissed prior to any briefing.

Counsel for Appellee is not aware of any other case in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## INTRODUCTION

DuraSystems Barriers, Inc. is a world leader in passive fire protection systems and an innovator in the field. Among DuraSystems' innovations is U.S. Patent No. 10,024,569 (the "'569 Patent"), which pertains to a modular fire-rated exhaust duct system—for transporting flammable or hazardous gases—that can be pre-fabricated and then assembled in the field. DuraSystems sued Appellants Van-Packer Co. and Jeremias, Inc. (hereinafter collectively "Van-Packer") for infringement of the '569 Patent, and the district court granted DuraSystems summary judgment of patent infringement. On appeal, Van-Packer raises a single challenge, contending that the district court misconstrued the "thermal spacers" element in the asserted claims. That challenge fails.

Van-Packer principally contends that the district court rendered the word "thermal" superfluous by not construing "thermal spacers" as a separate and distinct element from the phrase "thermal spacers thermally isolating." However, the district court properly construed the claim language according to the plain language of the claim, the specification, and the prosecution history. The district court correctly construed "thermal

spacers" together with "thermally isolating," because the language "thermal spacers thermally isolating" is—according to a plain reading of the claim— defining a particular function of the "thermal spacers." *See Renishaw PLC v. Marposs Socita per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). And the prosecution history supports a plain language reading of the claim. The applicant added the "thermal spacers thermally isolating" language in response to a rejection for the specific purpose of explicitly defining a characteristic of the "thermal spacers." The district court's construction is correct, and Van-Packer's often confusing arguments cannot overcome that proper construction.

Van-Packer also seemingly tries to collaterally attack the district court's determination that its products infringe the asserted claims of the '569 Patent. But that effort fails. Before the district court, Van-Packer conceded that its accused products satisfy the district court's construction of "thermal spacers thermally isolating." Accordingly, it cannot un-ring that bell on appeal, and its arguments are waived. In any event, Van-Packer's

arguments on the merits fare no better. The district court correctly concluded that Van-Packer's products have "thermal spacers" and infringe the asserted claims of the '569 Patent as a matter of law.

The Court should affirm the judgment below.

## COUNTERSTATEMENT OF THE ISSUES

Whether the district court properly construed "thermal spacers thermally isolating" consistent with the plain language of the claims, the specification, and the prosecution history.

## COUNTERSTATEMENT OF THE CASE

### I.   BACKGROUND[1]

#### A.   Technology of the '569 Patent

The '569 Patent pertains to fire-rated exhaust ducts and modules that are connected to make an exhaust duct. Fire-rated exhaust ducts are used to transport flammable or hazardous gases, vapors or particles in a building to a treatment system or to exhaust them externally to the building. (Appx122,

---

[1] Van-Packer purports to reproduce the three independent claims of the '569 Patent at issue in this case, Claims 1, 10 and 16, at pages i – iii of its opening brief. However, Claim 1 contains an error in that the phrase "said first exterior flange connector," is repeated in the third element. Claim 10 contains an error in that the phrase "and one of said exhaust duct module" should read "and one <u>end</u> of said exhaust duct module."

1:13-19.) Ventilating such flammable exhaust often requires transporting the exhaust across fire separators in a building. (*Id*. at 1:20-25.) Thus, to prevent fires from traveling through the exhaust ducts across fire separators to spread through a building quickly, ducts ventilating such flammable exhaust must be fire rated. "To be classified as a fire-rated duct, an exhaust duct must be capable of preventing the release of flammable materials from inside the duct and/or combustible materials adjacent the exterior of the exhaust duct from catching fire if a fire exists on the other side of the duct. In other words, a fire-rated duct must be capable of minimizing the transfer of heat through or across the duct walls." (*Id.* at 1:30-36.)

The '569 Patent claims a particular fire-rated duct system that can be pre-fabricated and then assembled in the field. (Appx122, 2:22-25.) Claim 1 is representative and discloses a "modular fire-rated exhaust duct assembly" that comprises "two or more exhaust duct modules." (Appx125, 8:47-49.) Each of the exhaust duct modules has "an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing." (Appx125, 8:50-53.) The void is "configured for receiving an insulation material, and including one or more

thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing." (Appx125, 8:55-59.) The modules also have "a first exterior flange connector" and "a second exterior flange connector," and "a said first and second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run." (Appx125-126, 8:60-9:6.) A "joint encasement section" is "configured to be field connectable to each of said exhaust duct modules and encase said junction." (Appx126, 9:7-9.)

The basic components of a single fire-rated exhaust duct module relevant to the '569 Patent and the present appeal are illustrated in Figures 4 and 5b of the '569 Patent. (Appx116-117.) Figure 4 is a longitudinal cross section of an exhaust duct module. (Appx123, 3:41-42.) The following reproduction of Figure 4 is taken from Van-Packer's brief, in which Van-Packer has colored the inner exhaust liner 210 red, the outer casing panels 310a and 310c blue, the thermal spacer 422 green, and the insulation material 410 yellow. (Defendants-Appellants Van-Packer Co. and Jereemias Inc's

Opening Brief ("Bf.") 18.) The yellow insulation material 410 fills the voids 402 that the thermal spacers (green) create between the inner metallic liner (red) and outer casing (blue). (Appx123, 5:30-38.) A similarly-colored version of Figure 5c is also provided.





**SECTION B-B**

**FIG. 5c**

As seen in these figures, the green thermal spacers are positioned "for supporting the outer casing panels 310 and maintaining the gap or void so that the insulating material 410 is not unnecessarily compressed or crushed." (Appx124-125, 6:61-7:2.) Avoiding compressing or crushing the insulation material is important because the insulation properties of the insulation can be compromised if the insulation is compressed or crushed. (*See* Appx1899, 106:20–109:14.)

However, as explained by Mr. Cheek, Van-Packer's expert, two surfaces mechanically joined together (such as by a spacer) may "provide a thermal bridge through which heat will travel" from one surface to the other. (Appx604, ¶ 86.) Thus, the spacers used to maintain a space between the

outer casing and the inner liner in the '569 Patent must be "thermal spacers" so that the spacers do not create a thermal bridge allowing heat to travel from one surface to the other such that the exhaust duct no longer prevents the spread of a fire across the walls of the duct. (*See* Appx122, 1:30-36.) The independent claims of the '569 Patent expressly incorporate this concept by requiring "said one or more thermal spacers thermally isolating said inner duct liner from said outer casing." This is the claim language at issue in this appeal.

## B.    Relevant Prosecution History of the '569 Patent

The claim term "thermal spacer" drew the Examiner's attention during prosecution of the '569 Patent. The Examiner cited prior art Callan (U.S. Patent No. 2,916,054) as teaching an exhaust duct module having "one or more thermal spacers (item 25, figure 3 [of Callan]) configured to maintain said inner flange and said outer casing in a spaced relationship so that said insulation material occupies said void." (Appx367-368.) Figure 3 of Callan is reproduced here (Appx1219):



The applicant responded to that rejection by arguing "that the 'sidewalls' 25 according to Callan do not comprise thermal spacers as being alleged and furthermore there is no description, teaching or suggestion by Callan that the sidewalls 25 are intended to maintain an inner duct in a spaced relationship from an outer casing, as recited in claim 1." (Appx405.)

The Examiner rejected the applicant's argument and maintained the rejection based on Callan. The Examiner interpreted "thermal spacers" in a manner that did not require any thermal performance by the spacers, stating, "Examiner would like to remind the applicant that the claim recites 'one or more thermal spacers configured to maintain said inner duct liner and said

outer casing in a spaced relationship'. Thus the spacers are only there to keep duct components in a spaced relationship *without requiring any specific thermal properties*." (Appx422, ¶ 7 (emphasis added).)

In response, the applicant explained to the Examiner that the term "thermal" as used in the '569 Patent and its claims refers to a particular characteristic or function, i.e., "thermally isolating": "The term 'thermal' in the context of the subject application means and refers to 'specific thermal properties', namely, thermally isolating." (Appx438-439.) The applicant pointed to particular support for this reading in the specification: "For instance, the 'thermal gasket' is described in Paragraph [00041] as follows, 'According to another aspect, a thermal gasket indicated by reference 724 in Fig. 9 can be included to <u>thermally isolate</u> the joint encasement sections 720 from the outer casing panel 310.'" (*Id.* (emphasis by applicant)). And the applicant explained that "[t]he thermal isolation function of the thermal spacers and the thermal gasket is entirely consistent with one of the problems addressed by the embodiments according to the present disclosure as described in Paragraph [0006]:

> "In a commercial kitchen, the exhaust hoods are configured to capture grease laden air over deep fryers and grills, which is extremely flammable, and must be transported through the building to an exterior area where it can be safely discharged. Due to the flammable nature of the exhausted vapour, a minor fire, for example, in the kitchen could enter the exhaust duct and quickly spread throughout the duct system. As a result, any potential fire inside the duct system must be contained and thermal transfer through the duct walls limited to prevent ignition of adjacent combustible material in the kitchen or other areas of the building…"

> According to one aspect, the arrangement of the inner duct liner, the outer casing, the insulation material in the void and the thermal spacers is configured to prevent the thermal transfer of heat, e.g. due to grease fire, from the inner duct to the outer casing.

(*Id.*)

Although the applicant explained that "thermal" in the context of the '569 Patent refers to "thermally isolating," to avoid further Examiner argument and rejections about whether "thermal spacers" alone incorporated a "thermally isolating" function, the applicant expressly incorporated that concept into the claims by adding the language "said one or more thermal spacers thermally isolating said inner duct liner from said outer casing" into the independent claims. (Appx432, 434, 436.)

### C.    Van-Packer's Claim Construction Arguments Below

DuraSystems sued Van-Packer for selling exhaust duct products that infringe the '569 Patent. During claim construction, Van-Packer focused on the term "thermal spacers" in the asserted claims, arguing that the phrase "thermal spacers thermally isolating" should be broken up such that "thermal spacers" and "thermally isolating" are construed to be separate requirements. (Appx555, n.5.) Van-Packer argued that "thermal spacers" should be construed to require "a spacer having a specific thermal *isolation* property" where a "spacer" is "something that maintains two components in a spaced relationship." (Appx555 (emphasis added).) Van-Packer argued that "a thermal *isolation* property of a spacer is an inherent property of the component, e.g., its thermal conductivity" (Appx556 (emphasis added)), or "a _material trait_" that is "_independent of material shape and size_" (Appx1976-1977 (emphasis in original)). Van-Packer provided "a simple example," explaining that "calcium silicate insulation board, which can be used as the claimed thermal spacer, has a thermal conductivity rating of approximately 0.175 W/m.K, while spacers made from stainless steel or carbon steel would have thermal conductivity ratings of 15 W/m.K and 45 W/m.K

respectively." (Appx556-557.) Thus, Van-Packer urged the district court to limit the meaning of "thermal spacer" to a spacer having "a specific thermal isolation property," i.e., a spacer made from a material having a material trait that thermally isolates regardless of its shape or configuration.

Van-Packer then argued that the lower court should separately construe "thermally isolating" to mean "preventing the thermal transfer of heat." (Appx560.) Van-Packer contended that under this construction a thermal spacer would satisfy the "thermally isolating" element only if it "cut off the thermal transfer of heat from the inner duct liner to the outer casing" (Appx560-561), despite the experts of both parties agreeing that it is physically impossible to do so (Appx1802 (citing Appx1903, 124:2-4 (Van-Packer's expert testifying, "Q. But preventing the thermal transfer of heat period is a physical impossibility, correct? A. Correct.")), Appx1836, ¶ 49 (DuraSystems' expert stating, "[I]t is not possible for any material to 'prevent' the transfer of heat which is a basic principle of thermal dynamics that a PHOSITA would know and understand.")).

**D.    The District Court's Construction**

The district court conducted a thorough analysis of the terms "thermal spacers" and "thermally isolating" separately, incorporating a detailed review of the prosecution history and the teachings of the specification in doing so. (Appx17-33.) As discussed in detail below, after analyzing the terms separately, the district court provided a single construction for the phrase "thermal spacers thermally isolating." (Appx32-33.)

> **1.    The district court analyzed "thermal spacers" to require the spacers to themselves thermally isolate, but need not do so via a particular thermal material property**

The district court determined that it needed to address two issues when construing "thermal spacers." First, it needed to determine whether the "thermal spacers" themselves need to "thermally isolate" (as opposed to the configuration of the module as a whole performing the thermal isolation function). (Appx22.) On this issue, the district court found that "by amending the draft independent claims to include the limitation 'thermally isolating' in an attempt to overcome Callan … [the applicant] restricted the meaning of 'thermal spacers' to spacers that thermally isolate the inner duct liner from the outer casing." (Appx22 ("*Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) ('A patentee could [limit the

- 14 -

meaning of a claim term] by clearly characterizing the invention in a way to try to overcome rejections based on prior art.' (citations omitted)); *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) ('[A]n amendment that clearly narrows the scope of a claim, such as by the addition of a new claim limitation, constitutes a disclaimer of any claim interpretation that would effectively eliminate the limitation or that would otherwise recapture the claim's original scope.'")).

Second, the district court addressed whether "thermal spacers" require "a specific thermal *isolation* property" as argued by Van-Packer. (Appx23.) Quoting Van-Packer, the district court noted that "'a property is a material trait,' and material traits 'are ones such as thermal conductivity, thermal capacity, etc. that *result* in 'thermal isolation.'" (Appx26 (emphasis by the court, citations omitted).) There is no mention of *any* "thermal isolation property" (i.e., a material trait such as thermal conductivity, thermal capacity, etc.) in the claims, specification, or prosecution history. After a thorough analysis, the district court determined that "thermal spacers" need not have "a specific thermal isolation property." (Appx26.) To arrive at this conclusion, the district court noted that the claims "make no

mention of thermal isolation properties, let alone any particular one." (*Id.*) Considering the prosecution history, the district court determined that the applicant "never limited thermal spacers to one thermal property." (*Id.*) It found that the applicant's statement concerning "specific thermal properties" when responding to the Examiner's argument during prosecution did not constitute a disclaimer of spacers that do not have a "specific thermal isolation property," as Van-Packer argued. (Appx25-26.) Consequently, the district court found that the applicant's statement during prosecution referencing "specific thermal properties" was not a disclaimer of claim scope, and that "thermal spacers" was not restricted to spacers made from materials having material traits with "specific thermal isolation properties." (Appx26.)

### 2. The district court found "thermally isolating" to mean limiting heat transfer, rather than preventing it entirely

The district court next addressed the proper meaning of "thermally isolating" and whether that term means to limit the transfer of heat (DuraSystems' argument) or to prevent the transfer of heat entirely (Van-Packer's argument). (Appx27-32.) In analyzing this term, the district court addressed the language of the claims and specification, prosecution history,

dictionary definitions, and testimony of expert witnesses. (*Id.*) It found that the applicant's statement during prosecution that, "the arrangement of the inner duct liner, the outer casing, the insulation material in the void and the thermal spacers is configured to prevent the thermal transfer of heat … from the inner duct to the outer casing" (Appx29 (quoting the prosecution history)), "when read in the context of the '569 Patent, [] demonstrates 'isolating' is best understood as 'limiting'" (Appx30). The district court, considering both the intrinsic and extrinsic evidence, reasoned that "the definition of 'isolating' must take a middle ground between 'preventing' (i.e., 'effectively stopping') the thermal transfer of heat and doing nothing," and concluded that the word "limiting," which "is broader than 'preventing,'" "fits the bill." (Appx29-30.)

Lastly, having decided to construe "isolating" as "limiting," the district court addressed the issue of whether DuraSystems' proposed language "limit[ing] the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating testing" should also be adopted. (Appx31.) Whereas Van-Packer's arguments opposing this language were framed as merely an

indefiniteness argument, the district court adopted that language and deferred addressing Van-Packer's indefiniteness defense until summary judgment. (Appx31-32.)[2]

### 3. The district court construed the phrase "thermal spacers thermally isolating"

After separately analyzing "thermal spacers" and "thermally isolating," the district court addressed whether those terms should be construed separately or together. (Appx32.) The district court construed the terms together because "they largely appear together in the Independent Claims, their separate constructions are primarily based on the same aspects of the '569 Patent's prosecution, and each construction influences the other."

---

[2] Van-Packer raised an "as-applied" indefiniteness argument against DuraSystems' proposed construction of "thermal spacers thermally isolating," which construction the district court largely adopted. (Appx32.) Van-Packer's "as-applied" indefiniteness argument was considered and rejected by the district court at summary judgment. (Appx78-79.) Van-Packer does not challenge the district court's indefiniteness ruling and has waived this argument on appeal by choosing to omit the as-applied indefiniteness of "thermal spacers thermally isolating" in their opening brief. *United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362, 1367 n.1 (Fed. Cir. 2023) (holding arguments advocated at the district court but not raised in the opening brief on appeal are waived (*citing Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990)).

(Appx33.) Thus, the district court construed "thermal spacers thermally isolating" to mean "components that maintain a space between the inner duct liner and outer casing that limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating." (Appx33.)

### E.    Van-Packer's Infringing Products

Van-Packer's products were found to infringe on summary judgment. (Appx69.) The only element Van-Packer disputed as lacking from the accused products was the "thermal spacers thermally isolating" claim element. (Appx66.)

The basic construction of Van-Packer's accused products is shown in this annotated photograph:



(Appx2166.) Van-Packer's accused products are a commercial embodiment of Van-Packer's U.S. Patent Application 16/362,991 (the "'991 Application"). (Appx2305-2325.) Figure 1 the '991 Application, reproduced below with coloring, shows the same thermal spacer as its commercial embodiment:



**FIG. 1**

(Appx2167, 2306.) The '991 Application explains the thermal characteristics

and function of the thermal spacers 106 as follows:

> …The spacer 106 also includes one or more perforations 130. The
> perforations are voids and/or openings **within the planar body
> of the spacer**. The perforations may be one of many shapes,
> including, but not limited to ovals, circles[, sic] squares,
> rectangles, pentagons, and/or hexagons.
>
> As shown in FIG. 4, the perforations 130 create vertical metal
> strips 132 between the perforations 130. The metal strips 132
> traverse between the two edges of the spacer. In an example, one
> perforation is between two metal strips. The **metal strips 130 act
> as a heat sink by reducing the amount of heat transferred
> between the inner liner 102 and the out [sic, outer] shell 104.**

(Appx2324, Appx2167-2168 (emphasis added).) The thermal spacers of the accused products perform as described in the '991 Application, and Van-Packer produced no evidence that the thermal spacers conduct sufficient heat between the inner duct liner and outer casing such that they create fail points during fire rating testing. (*See, e.g.*, Appx69, Appx2324, Appx2167-2168, Appx2118-2119.) The district court granted summary judgment to DuraSystems.

## SUMMARY OF THE ARGUMENT

The district court properly construed "thermal spacers" and "thermal spacer thermally isolating." The district court construed these terms according to the plain language of the claims themselves. The claims explicitly define two particular characteristics or functions of the "thermal spacers"—a spacing function and a thermal function. And that thermal function is specifically defined in the claims as "thermally isolating said inner duct liner from said outer casing." The district court correctly defined "thermal spacers" as having both the spacing and thermal functions explicitly stated in the claims. That construction is further supported by the specification. Moreover, the district court's construction is consistent with

the prosecution history. The Examiner had construed "thermal spacers" as having only a spacing function, but the applicant explained that they also have a "thermal" function—namely, thermally isolating. To make that meaning clear, the applicant added the language "said one or more thermal spacers thermally isolating said inner duct liner from said outer casing." With that clarifying amendment, the Examiner allowed the claims.

Van-Packer throws several challenges at the district court's construction, but none of them stick. Contrary to Van-Packer's argument, the district court's construction does not render "thermal" in "thermal spacers" superfluous. Van-Packer's contention simply ignores the plain language of the claims and the prosecution history, which makes clear that the "thermally isolating" clause defines a function of the "thermal spacers." They are not distinct claim elements, but rather are inextricably connected. Thus, the district court's construction giving meaning to "thermal spacers thermally isolating" gives meaning to "thermal spacers."

Van-Packer's prosecution-disclaimer argument similarly fails. Van-Packer's argument is based primarily on a misrepresentation of the record. Van-Packer truncates the applicant's statement during prosecution to

suggest that the applicant disclaimed thermal spacers that did not have specific thermal properties. But applicant's full statement is clear and consistent with the district court's construction: "The term 'thermal' in the context of the subject application means and refers to 'specific thermal properties', namely, thermally isolating." (Appx438.)

In any event, the construction that Van-Packer urges on appeal is not properly before the Court because it is not the construction Van-Packer proposed to the district court. Van-Packer has waived its new claim construction because it would change the scope of the claim construction it proposed below. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001).

Van-Packer lodges a few additional collateral attacks on the district court's judgment of infringement. It contends that the district court altered its claim construction in ruling on summary judgment. Not so. Van-Packer's argument is premised entirely on an unfair reading of the district court's decision and a hope of obfuscating the issues.

Van-Packer also tries to collaterally attack the district court's determination that its products infringed the asserted claims of the '569

Patent. First, Van-Packer conceded below that its products satisfy the district court's construction of "thermal spacers thermally isolating." Accordingly, Van-Packer has waived its arguments on appeal that the products do not satisfy this element under the district court's construction. Second, and in any event, the district court considered the arguments that Van-Packer marshals before this Court and appropriately rejected them.

Thus, the Court should affirm the district court's grant of summary judgment to DuraSystems.

## II.     ARGUMENT

### A.     Legal Standards

Claim construction "must begin with the words of the claims themselves." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006). And "words of a claim are generally given their ordinary and customary meaning," i.e., "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted). "The words used in the claims are interpreted in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history." *Teleflex,*

*Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). Courts may also look to the prosecution history to supply additional evidence of a claim term's intended meaning. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004).

This Court reviews a "district court's ultimate interpretation of patent claims de novo." *Cardsoft (assignment for the Benefit of Creditors), LLC v. Verifone, Inc.*, 807 F.3d 1346, 1349–50 (Fed. Cir. 2015). When a district court reviews only the intrinsic evidence (the claims, specification, and prosecution history), the issue is one solely of law, and this Court reviews the construction de novo. *Id.* If the "district court resolves factual disputes over evidence extrinsic to the patent, [this Court] 'review[s] for clear error those factual findings that underlie a district court's claim construction.'" *Id.* (quoting *Teva Pharma. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 333 (2015)).

**B.    The District Court's Construction of "Thermal Spacers Thermally Isolating" Is Correct**

**1.    The district court's construction stays true to the plain language of the claim**

The district court properly construed the term "thermal spacers." Although the claim construction process considers a number of facets, the language of the claims is paramount, and "[t]he construction that stays true

to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw*, 158 F.3d at 1250. The plain language of the claims in the '569 Patent makes clear that the "thermal spacers" have a "spacing" function and a "thermal" function, and expressly states each of those functions in the claims themselves:

> including one or more **thermal spacers** configured to *maintain said inner duct liner and said outer casing in a spaced relationship* so that the said insulation material occupies said void, **said** one or more **thermal spacers** *thermally isolating said inner duct liner from said outer casing*

(*See, e.g.*, Appx125, Claim 1 (emphases added).) As seen above, the plain language of the claims contains two phrases that further define "thermal spacers." The first phrase is directed to further defining the spacing function of the "thermal spacers" as being "configured to maintain said inner duct liner and said outer casing in a spaced relationship so that the said insulation material occupies said void."[3] The second phrase similarly further defines the "thermal spacers" by specifying the "thermal" function as "thermally

---

[3] Notably, Van-Packer does not argue that this phrase explaining the spacing function of the "thermal spacers" renders "spacers" superfluous.

isolating said inner duct liner from said outer casing." The introductory phrase "***said one or more thermal spacers*** thermally isolating said inner duct liner from said outer casing" makes clear that the phrase "thermally isolating said inner duct liner from said outer casing" is merely defining the thermal function of the "thermal spacers," as opposed to introducing a new and separate claim element.

The district court stayed true to the claim language and properly incorporated each of the "spacing" and "thermal" functions of the thermal spacers when it construed "thermal spacers thermally isolating" to mean "components that maintain a space between the inner duct liner and outer casing [i.e., the "spacing" function] that limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating [i.e., the "thermal" function]." (Appx33.) Thus, the district court's construction of "thermal spacers thermally isolating" properly captures both the "spacing" and "thermal" functions of the "thermal spacers" as recited in the claim language.

The specification further supports the conclusion that "thermally isolating" defines a function of the "thermal spacers." *Phillips*, 415 F.3d at

1315 ("the specification 'is always highly relevant to the claim construction analysis.'" (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In addressing other elements of the invention, the specification explains that "a thermal gasket … can be included to *thermally isolate* the joint encasement sections from the outer casing panel." (Appx125, 7:48–50 (emphasis added).) Thus, the specification specifically equates "thermal" with "thermally isolating." This is consistent with the plain language of the claims which defines one function of the "thermal spacers" as "thermally isolating."

The district court's construction of "thermal spacers" is thus consistent with the plain language of the claims, as well as the specification, and is correct.

## 2. The district court's construction is consistent with the prosecution history

The district court's construction is also supported by the prosecution history. During prosecution of the '569 Patent, the applicant argued that the Callan reference did not disclose or render obvious the "thermal spacers" element in the proposed claims. (Appx405.) The Examiner disagreed with that argument, stating that the claimed "thermal spacers configured to

maintain said inner duct liner and said outer casing in a spaced relationship … are only there to keep duct components in a spaced relationship *without requiring any specific thermal properties*." (Appx422 (emphasis added).) Thus, the Examiner interpreted the term "thermal spacers" standing alone as having only a spacing function, and *not* requiring the spacers to have any specific thermal properties, characteristics or functions. In response, the applicant explained that "thermal" in the context of the '569 Patent refers to "thermally isolating," but to avoid further Examiner argument and rejections about whether the term "thermal spacers" alone requires a "thermally isolating" function, the applicant expressly incorporated that function into the claims by adding the language "said thermal spacers thermally isolating said inner duct liner from said outer casing." (Appx 432, Appx434, Appx436, Appx440.)

Thus, the purpose of the added claim language—the very language at issue here—was to expressly state the "thermally isolating" nature or function of the antecedent "thermal spacers" to which the Examiner previously ascribed no thermal nature, characteristic or function. Adding language to clarify that the thermal aspect of the "thermal spacers" was to

"thermally isolat[e] said inner duct liner from said outer casing" distinguished the claimed "thermal spacers" from the Examiner's argued "thermal spacers" that do not thermally isolate in Callan. The Examiner allowed the claims based on this clarifying amendment. (Appx452 ("The following is an examiner's statement of reasons for allowance: the primary reason for allowance is the inclusion of limitations 'said one or more thermal spacers thermally isolating said inner duct liner from said outer casing' in claims 1, 10 and 16.").) *See University of Massachusetts v. L'Oreal S.A.*, 36 F.4th 1374, 1379, 1382-83 (Fed. Cir. 2022) (explaining that prosecution history "'may be critical in interpreting disputed claim terms'" and holding that prosecution history compelled interpretation).

In view of the foregoing, the prosecution history makes clear that the phrase "said thermal spacers thermally isolating said inner duct liner from said outer casing" was added to the claims to clarify the "thermal" aspect or function of the antecedent "thermal spacers." Thus, it was consistent with the prosecution history and proper for the district court to construe the entire phrase "thermal spacers thermally isolating" instead of construing "thermal spacers" and "thermally isolating" separately because, as the district court

found, "they largely appear together in the Independent Claims, their separate constructions are primarily based on the same aspects of the '569 Patent's prosecution, and each construction influences the other." (Appx33.) Moreover, because the "thermally isolating" language was added specifically to address the Examiner's position that the "thermal spacers" element alone does not require "any specific thermal properties," the prosecution history supports construing the "thermally isolating" language as providing meaning to "thermal" in the term "thermal spacers." *See Phillips*, 415 F.3d at 1318 (explaining that "prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention.").

### C. Van-Packer's Arguments that "Thermal Spacers" Must Be Construed Differently than "Thermal Spacer Thermally Isolating" Fail

Van-Packer argues that the language in the district court's construction about limiting the amount of heat conducted—"limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating"—"relates to the 'thermally isolating' term, [and] there is nothing in that construction that

accounts for the separate 'thermal' term modifying spacers[.]" (Bf. 12.) Indeed, Van-Packer contends that the district court should have given very different meanings to "thermal" and "thermally" when construing the phrase "thermal spacers thermally isolating." Two issues emerge from this argument.

The first issue is whether the district court's interpretation of "thermally isolating" is correct. Van-Packer does not dispute on appeal that the district court properly construed "thermally isolating" to mean "limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating." (*See* Bf. 9–11.) Thus, this portion of the district court's construction is not before this Court for review.

The second issue, which is before this Court, is whether the district court erred by not treating "thermal spacers" and "thermally isolating" as two separate and distinct claim elements, each requiring its own construction. (*See* Bf. 8.) Van-Packer's arguments that "thermal spacers" and "thermally isolating" are two separate and distinct elements are unavailing for the reasons discussed below.

### 1. The district court's construction of "thermal spacers thermally isolating" does not render "thermal spacers" superfluous

Van-Packer's primary argument is that the district court's construction of "thermal spacers thermally isolating" renders the term "thermal" in "thermal spacers" superfluous. (Bf. 9.) This argument fails for two reasons.

First, this argument improperly presumes that "thermal spacers" and "thermal spacers thermally isolating" are two separate and distinct claim elements. As established above, the language of the claim and the prosecution history each makes clear that the "thermally isolating" language is not a separate claim element divorced from the "thermal spacers," but rather is claim language defining that the "thermal" function of the "said one or more thermal spacers" is "thermally isolating." In other words, the "thermal spacers" and "thermal spacers thermally isolating" are not distinct claim elements, but rather are inextricably connected and, consequently, the construction giving meaning to "thermal spacers thermally isolating" limitation also gives meaning to "thermal spacers" and does not render the "thermal spacers" superfluous.

As presented above, this conclusion flows from the prosecution history and the claim amendment adding the "said one or more thermal spacers thermally isolating" language. The Examiner interpreted "thermal spacers" as "… only there to keep duct components in a spaced relationship *without requiring any specific thermal properties*." (Appx422, para. 7 (emphasis added).) In response, the applicant added the "thermal spacers thermally isolating" language to explicitly define the "thermal" function of the "thermal spacers." *See Phillips*, 415 F.3d at 1318. Consequently, the district court's construction requiring the "thermal spacers thermally isolating" to "limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating" cannot render the claim term "thermal spacers" superfluous because the Examiner found that "thermal spacers" standing alone required no "specific thermal properties."

Second, even if this Court were to find that the district court's construction renders "thermal spacers" redundant or superfluous—which it does not—that construction would still not be improper. Van-Packer is correct that a construction that renders a claim limitation redundant or

superfluous "is disfavored." (Bf. 9 (citing *Intel Corp. v. Qualcomm Inc.,* 21 F.4th 801, 810 (Fed. Cir. 2021); *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017)). However, "[t]he preference for giving meaning to all terms … is not an inflexible rule that supersedes all other principles of claim construction." *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB,* 820 F.3d 419, 429 (Fed. Cir. 2016) (citing *Power Mosfet Techs. L.L.C. v. Siemens AG,* 378 F.3d 1396, 1410 (Fed. Cir. 2004). "Furthermore, while interpretations that render some portion of the claim language superfluous are disfavored, where neither the plain meaning nor the patent itself commands a difference in scope between two terms, they may be construed identically." *Power Mosfet Techs.*, 378 F.3d at 1410 (citing *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1373 (Fed. Cir. 2002)). To the extent the district court's construction of "thermal spacers thermally isolating" could be interpreted to render "thermal spacers" superfluous, the foregoing prosecution history establishes that any such redundancy in those claim terms is proper. That redundancy in claim construction is not foreclosed "is particularly true where, as in this case, intrinsic evidence makes clear that

the 'redundant' construction is correct." *VLSI Tech. LLC v. Intel Corp.*, 53 F.4th 646, 653 (Fed. Cir. 2022).

> **2.    The district court properly found that prosecution disclaimer does not apply and its construction does not reclaim claim scope disclaimed during prosecution**

Van-Packer argues that the applicant's statement, "[t]he term 'thermal' in the context of the subject application means and refers to 'specific thermal properties'" constitutes a disclaimer of claim scope. (Bf. 14 (quoting Appx438).) Van-Packer further argues that the district court's construction "improperly allowed DuraSystems to reclaim that scope." (*Id.*) Van-Packer's prosecution disclaimer and recapture arguments fail for two reasons.

First, Van-Packer's argument of prosecution history disclaimer is based on a misrepresentation of the record. Van-Packer truncates the applicant's statement during prosecution to misrepresent that the applicant disclaimed thermal spacers that lack "specific thermal properties." (Bf. 13 - 14.) The applicant's full statement during prosecution was, "The term 'thermal' in the context of the subject application means and refers to 'specific thermal properties', ***namely, thermally isolating***." (Appx438.) Thus, at most the applicant disclaimed thermal spacers that lack the function

"thermally isolating," not thermal spacers that lack "specific thermal properties" (i.e., spacers without specific material traits) as Van-Packer misrepresents.

Moreover, the applicant placed the phrase "specific thermal properties" in quotation marks to signal that it was merely a reference to the Examiner's argument to which the applicant was responding. (Appx438.) More importantly, to avoid any doubt concerning the meaning of "thermal" as used in "thermal spacers," the applicant explained that the term "thermal" in the subject application means and refers to "*thermally isolating.*" (Appx438-439.) Thus, to the extent the applicant disclaimed anything, it disclaimed only thermal spacers that do not "thermally isolate."

Further still, the applicant amended all the independent claims to include the claim element "said one or more thermal spacers *thermally isolating*...." (Appx432, Appx434, Appx436.) The district court's construction of "thermal spacers thermally isolating" properly includes the "thermally isolating" function because it requires "components ... that limit the amount of heat conducted through the components...." (Appx33.) Also as noted above, Van-Packer does not dispute that this part of the district

court's construction gives proper meaning to "thermally isolating." Thus,

Van-Packer's argument that the district court's construction "reclaims"

claim scope disclaimed during prosecution is baseless.

### 3.  *Intel Corporation v. Qualcomm Inc.* **is inapposite to the facts and circumstances of this case**

In support of its argument that the district court's construction renders

"thermal" in "thermal spacers" superfluous, Van-Packer contends that the

present case is similar to *Intel Corporation v. Qualcomm Inc.*, 21 F.4th 801 (Fed.

Cir. 2021), in which this Court found that "'hardware buffer' must mean

something more than just a 'buffer implemented in hardware,' … or else the

word 'hardware' would be erased from the claims." (Bf. 11 (quoting *Intel*, 21

F.4th at 809).) In coming to this conclusion, this Court noted that "every

buffer in our (physical) world is ultimately implemented on a physical

device (i.e., hardware)[.]" *Intel*, 21 F.4th at 809. In this case, the claim term at

issue is "thermal spacers thermally isolating." The district court construed

this phrase to mean "components that maintain a space between the inner

duct liner and outer casing that limit the amount of heat conducted through

the components so that they do not create fail points on the inner duct liner

or outer casing during fire rating." (Appx33.) There is no evidence (or even

argument) that *all* spacers "limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating." Because the foregoing language of the district court's construction ascribes thermal restrictions on the spacers that are not present in all thermal spacers, the district court's construction gives meaning to "thermal spacers" that excludes some spacers, unlike the PTAB's construction of "hardware buffer" in *Intel* that included *all* buffers. Consequently, the analysis and findings in *Intel* are not applicable to the facts and circumstances of this case.

### D.    Van-Packer Waived Its Proposed "Specific Thermal Property" Construction of "Thermal Spacers"

Van-Packer argues to this Court that the "the term 'thermal spacers,' which appears twice in the subject claims, [should] be construed to mean 'a spacer having *a specific thermal property*' where a 'spacer' is something that maintains two components in a spaced relationship." (Bf. 10 (purporting to quote Appx555-556).) This proposed construction is not the construction Van-Packer proposed below. Rather, Van-Packer argued to the district court that "thermal spacers" should be construed to mean "'a spacer having a specific thermal <u>isolation</u> property' where a 'spacer' is something that

maintains two components in a spaced relationship." (Appx555-556.) This Court has made clear that the doctrine of waiver precludes a party from adopting a new claim construction on appeal that changes the scope of the claim construction argued below.[4] *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) (citing *Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("In short, this court does not "review" that which was not presented to the district court."); *see also Key Pharms. v. Hercon Lab'ys Corp.*, 161 F.3d 709, 714–15 (Fed. Cir. 1998) (this Court refusing to consider new claim constructions on appeal as the party may "get the proverbial 'second-bite'").

Van-Packer's removal of "isolation" to argue "specific thermal properties" changes the scope of the proposed construction "specific thermal *isolation* properties" that it argued below. (*Compare* Bf. 10 *with* Appx555-556.) By removing "isolation" from its proposed construction Van-Packer has broadened the scope of that term to encompass any and all "specific

---

[4] Federal Circuit law governs claim construction waiver. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1250–51 (Fed. Cir. 2005) ("Because the ability to make claim construction arguments on appeal is intimately bound up with patent enforcement, we hold that Federal Circuit law controls waiver in the context of claim construction arguments.").

thermal properties" as opposed to only those "specific thermal properties" that have an "isolating" function as it argued below. Waiver clearly applies.

More importantly, Van-Packer has removed "isolation" from its proposed construction of "thermal spacers" because construing "thermal spacers" to mean "specific thermal *isolation* properties" would render the claim language "thermally *isolating*" superfluous. Whereas Van-Packer's primary argument is that the district court's construction is erroneous because it renders "thermal spacers" superfluous, it is no wonder that Van-Packer has dropped "isolation" from the construction it proposes to this Court to avoid having its "superfluous" argument turned against them. But Van-Packer is now foreclosed from raising that revised construction on appeal having waived that argument by failing to make it below. *Interactive Gift Exp.*, 256 F.3d at 1346; *Key Pharms.*, 161 F.3d at 714–15.

### E.    The district court did not alter its construction of "thermal spacers thermally isolating" when granting summary judgment of infringement

Van-Packer argues that when granting summary judgment of infringement "the district court changed its construction to specify that 'spacers with perforations or holes maintain a spaced relationship and limit

the amount of heat conducted through the components so that they do not create fail points." (Bf. 6–7 (quoting Appx69).) This argument takes the district court's statement out of context to morph it into something that it is not. When the statement is read in context it is clear the district court did not change its construction of "thermal spacers thermally isolating," but rather applied its original construction of that term to Van-Packer's accused products to find infringement as a matter of law. The district court's analysis leading to its conclusion of infringement (which Van-Packer argues constitutes a different claim construction) is reproduced here:

> Defendants argue that the Court's claim construction makes clear a spacer cannot have holes. *See* Defs.' Mot. Summ. J. 17 [Appx2793] (citing Sept. 3, 2021 Order 22 [Appx22]). First, Defendants argue that a thermal spacer cannot contain holes because a thermal spacer must maintain the space between the inner duct liner and the outer casing and holes do not maintain space. *See id.* To be sure, holes *without* a spacer could not maintain a spaced relationship, but that a spacer is not solid does not preclude its overall ability to maintain a space between the inner duct liner and outer casing.
>
> Defendants also argue that the holes cannot be considered part of the spacer in light of the claim language. Per Defendants, the '569 Patent "distinctly claims *the void* separately." *See id.* at 18 [Appx2794] (emphasis added). The '569 Patent does make clear that the duct modules contain *a* void between the inner duct liner and outer casing. *See id.* at 17–18 [Appx2793-2794]. But Defendants' argument relies too heavily on the word "void" and

- 43 -

offers too little in the way of analysis of the actual claim language. Perforations *in the spacer* are not themselves a "void … between at least a portion of space between said inner duct liner and said outer casing," *id.* at 17 [Appx2793] (emphasis and quotation marks omitted).

To review, a "thermal spacer thermally isolating" is a component that "maintain[s] a space between the inner duct liner and outer casing that limit[s] the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating testing," Sept. 3, 2021 Order 33 [Appx33]. The Court concludes that spacers with perforations or holes maintain a spaced relationship and limit the amount of heat conducted through the components so that they do not create fail points. This conclusion compels the Court to grant summary judgment as to infringement in Plaintiff's favor.

(Appx69 (all alterations and emphasis in original).)

Van-Packer argues that the second to last sentence quoted above was the district court "chang[ing] its construction" of "thermal spacers thermally isolating." (Bf. 6-7.) Not so. In the immediately prior sentence, the district court quotes verbatim its original construction of "thermal spacers thermally isolating." The district court then applied that construction to Van-Packer's accused thermal spacers to come to its "conclusion" of infringement. Unfortunately, the district court's conclusion is missing the word "Defendants," but reading the statement in context it is clear that the district

court was stating its conclusion regarding application of its original claim construction to Defendants' accused products and not rendering a new construction of "thermal spacers thermally isolating":  "To review, a 'thermal spacer thermally isolating' is a component that 'maintain[s] a space between the inner duct liner and outer casing that limit[s] the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating testing,[.]' The Court *concludes* that [Defendants'] spacers with perforations or holes maintain a spaced relationship and limit the amount of heat conducted thorough the components so that they do not create fail points. ***This conclusion*** compels the Court to grant summary judgment as to infringement in Plaintiff's favor." (Appx69 (emphasis added).) Only by applying its original construction to Van-Packer's accused products could the court "conclude" that the accused products meet the "thermal spacers thermally isolating" element and grant summary judgment of infringement. The district court did not change its original construction of "thermal spacers thermally isolating" when finding summary judgment of infringement.

**F.     The Court Properly Found that Van-Packer's Products Meet the "Thermal Spacers Thermally Isolating" Limitation**

Van-Packer argues that the thermal spacers in their accused products do not meet the "thermal spacers thermally isolating" limitation under its proposed construction or the construction of the district court. (Bf. 14-15.) As to infringement under the district court's proper construction of "thermal spacers thermally isolating," Van-Packer's arguments of no infringement fail because they have waived all arguments of no infringement under that construction, and the district court's finding that no reasonable jury could find that Van-Packer's thermal spacers do not meet that construction was correct in any event. Under Van-Packer's proposed construction, this Court would need to remand to the district court for it to consider infringement under that construction in the first instance.

**1.     Van-Packer has waived any argument that its thermal spacers do not meet the district court's construction of "thermal spacers thermally isolating"**

Van-Packer argues no infringement under the district court's construction because "under the construction of 'thermal spacers thermally isolating' adopted by the district court, it is the holes, rather than the spacers, 'that limit the amount of heat conducted through the components.'" (Bf 15.)

But Van-Packer readily admits that it conceded below that its accused products satisfy the district court's construction of "thermal spacers thermally isolating": "Van-Packer did not dispute that, under the district court's construction, the accused products satisfy the 'thermal spacers thermally isolating' limitation." (Bf. 6.) Consequently, if this Court affirms the lower court's construction, then Van-Packer has waived all arguments on appeal that its accused products do not infringe, and the Court should affirm.

> **2.    The district court properly rejected Van-Packer's argument that the perforations in its thermal spacers are the separately claimed "voids"**

Van-Packer argues that "the district court erroneously found that holes or voids defined by the accused spacers are part of such spacers themselves." (Bf. 14 (citing Appx69).) Van-Packer concocts this argument by using semantics to sow confusion between the shape of its thermal spacers, which contain holes or perforations, and the separate "void" between the inner liner and outer shell in the claims, which is distinct from and does not pertain to the thermal spacers.

The district court appropriately considered and rejected Van-Packer's argument that the perforations in its spacers are the claimed "voids" between the inner duct liner and the outer casing and, consequently, are not part of the spacer:

> Defendants also argue that the holes cannot be considered part of the spacer in light of the claim language. Per Defendants, the '569 Patent "distinctly claims *the void* separately." *See* [Appx2794] (emphasis added). The '569 Patent does make clear that the duct modules contain *a* void between the inner duct liner and outer casing. *See* [Appx2793-2794]. But Defendants' argument relies too heavily on the word "void" and offers too little in the way of analysis of the actual claim language. Perforations *in the spacer* are not themselves a "void ... between at least a portion of space between said inner duct liner and said outer casing," [Appx1793] (emphasis and quotation marks omitted).

(Appx69 (original emphasis).) The district court's logic is sound and its finding that the perforations in Van-Packer's spacers are not the claimed "void" between the inner duct liner and the outer casing is correct. The district court also considered and appropriately rejected Van-Packer's argument that its claim construction "makes clear a spacer cannot have holes" (Appx69 (citing Appx2793)):

> First, Defendants argue that a thermal spacer cannot contain holes because a thermal spacer must maintain the space between the inner duct liner and the outer casing and holes do not

> maintain space. *See* [Appx2293]. To be sure, holes *without* a
> spacer could not maintain a spaced relationship, but that a
> spacer is not solid does not preclude its overall ability to
> maintain a space between the inner duct liner and outer casing.

(Appx69 (original emphasis).) Consequently, the district court's finding that

spacers with holes in them are not *ipso facto* excluded by its construction was

correct.

Additionally, Van-Packer's argument that the perforations in its

thermal spacers are not part of the thermal spacers fails because it is founded

on mischaracterizations of the record. It is undisputed that the thermal

spacers in the accused products are the metal spacers colored green in the

following picture:



(Appx2241.) It is also undisputed that these thermal spacers have "cutouts" (*id.*), "holes" or "perforations" (Appx69, Appx2167-2168), or "voids," as Van-Packer puts it (Bf. 15).

The independent claims include the following limitations involving a "void": "and a void being formed between at least a portion of the space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material."[5] (Bf. (i) – (iii)). Thus, Van-Packer uses the term "void" to identify the perforations in its thermal spacers to sow confusion between the perforations in its spacers and the claimed "void" formed between the inner duct liner and the outer shell. To correct this confusion DuraSystems will use "perforation(s)" to refer to the perforations in Van-Packer's spacers and "void" to refer to the claimed void between the inner duct liner and outer shell.

First, Van-Packer mischaracterizes the testimony of Mr. Crimi, DuraSystems' expert. Referring to the perforations in its thermal spacers, Van-Packer argues that in his claim charts "DuraSystems' technical expert,

---

[5] Independent Claim 16 recites a "compressible insulation material" in this limitation, but that difference in claim language is not material to the argument at hand.

Mr. Crimi, refers to 'ceramic fiber insulation that occupies the ***void.***'" (Bf. 15 (quoting Appx2241 (emphasis by Appellants)).) Not so. Mr. Crimi used the word "void" to refer to the claimed "void" formed between the inner duct liner and the outer casing. The following pictures are reproduced from the claim chart in Mr. Crimi's expert report addressing the claim elements reciting a "void" between the inner duct liner and outer casing filled with insulation:



Void between inner duct liner and outer casing



The void is filled with a compressible ceramic fiber insulation.

(Appx2239-2240.)  On the next page of the claim chart in his expert report (Appx2241 quoted by Appellants), Mr. Crimi addresses the "thermal spacers thermally isolating" element:

and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing;

Each exhaust duct module includes one or more thermal spacers that maintain an annular space between the inner duct liner and the outer casing so that the ceramic fiber insulation occupies the void. The thermal spacers have been colorized green in the following picture of the sample provided by Van-Packer:



The colorized spacers are thermal spacers because they are configured to limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating testing. Specifically, the cutout portions of the spacers are designed to limit the transfer of heat through the spacer between the inner duct liner and the outer casing. This is explained in Van-Packer's U.S. Patent Application Publication No. 2019/0293301 which states as follows: "The spacer may include perforations that create metal strips between each of the perforation, wherein the metal strips connect a top edge of the spacer

(Appx2241.) As seen above, Mr. Crimi's statement that "ceramic fiber insulation occupies the void" refers to the insulation occupying the claimed "void" between the inner duct liner and outer casing pointed out on the

previous page of his report, ***not*** the "cutout portions of the spacers" as Van-Packer misrepresents. (*See* Bf. 15.)

Second, it is the shape of Van-Packer's thermal spacers that limits the heat conducted through the spacers so as to not create fail points during fire rating testing. As noted above, Van-Packer explains in its '991 Application that the shape of its spacers is specially designed with "perforations 130 creat[ing] vertical metal strips 132 between the perforations 130" and "[t]he metal ***strips 130 act as a heat sink by reducing the amount of heat transferred between the inner liner 102 and the out [sic, outer] shell 104.***" (Appx2167-2168 (emphasis added)). Despite this pre-litigation representation to the Patent Office, Van-Packer now argues that "it is indisputably the holes that limit heat conductivity, as opposed to the spacers, [and] improperly including the holes as part of the accused spacers falsely imputes a thermal characteristic to such spacers." (Bf.15.) This is a semantical argument that withers under scrutiny.

There is no dispute that Van-Packer's spacers are specially shaped to limit the transfer of heat between the inner liner and the outer shell. The spacer can be described from the perspective of negative space as having

"perforations" or "holes," or described from the perspective of positive space (as in the '991 Application) as having metal "strips" formed by the perforations. Regardless of how they are described, the shape of the spacers is the same, and the spacers meet the district court's construction of "components that maintain a space between the inner duct liner and outer casing that limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating." (Appx69, Appx2218.) Indeed, Van-Packer does not address the requirement that the spacers "limit the amount of heat conducted ***through the components.***" (*See* Bf. 14-18.) Instead, Van-Packer merely discusses "thermal isolation" generally without any analysis of the district court's actual construction of "thermal spacers thermally isolating." (*See id.*) Nowhere does Van-Packer make any argument or present any evidence that its thermal spacers conduct sufficient heat through them to create fail points during fire rating testing. (*See id.*) Because Van-Packer has failed to present any evidence or argument that applies the district court's actual construction of "thermal spacers thermally isolating" to the accused products, Van-Packer's argument that its products do not meet that

- 55 -

construction fails, and the district court's judgment of infringement as a matter of law was correct.

### G. Reversal Is Not an Appropriate Appellate Remedy Because the District Court Has Not Considered Infringement under Van-Packer's Proposed Construction

Van-Packer argues that "reversal, rather than remand, is the appropriate manner of disposing of this Appeal" because "[t]he parties filed cross-motions for summary judgment" on the issue of infringement. (Bf. 18.) Van-Packer argues that "DuraSystems presented no evidence of infringement under Van-Packer's construction of 'thermal spacers'…." (*Id.*) Van-Packer's argument is misleading and contrary to law.

The district court issued its claim construction ruling rejecting Van-Packer's proposed construction of "thermal spacers" on September 3, 2021. (Appx26, Appx33.) The parties filed their cross motions for summary judgment on the issue of infringement on or about June 9, 2022,[6] which motions were based on the district court's claim constructions. (Appx2160, Appx2169-2174, Appx2777, Appx2790-2794.) Because the district court

---

[6] Van-Packer filed their motion for summary judgment of no infringement at 12:09:26 AM on June 10, 2022, just after the June 9, 2022 deadline. (Appx2777.)

rejected Van-Packer's proposed construction that "thermal spacers" require "specific thermal isolation properties" in its claim construction order [Appx22, Appx32], neither party presented evidence or argument in their summary judgment papers addressing Van-Packer's previously-rejected construction. [*See generally* Appx2160-2175 (Plaintiff's summary judgment motion for infringement based on the district court's constructions), Appx2790-2794 (Defendants' summary judgment motion for no infringement arguing the district court's claim constructions).) Moreover, neither party has addressed infringement under Van-Packer's new, broader construction argued to this Court requiring merely "a specific thermal property" because that construction was never presented below. (*See* Appx555-556.) Because neither party has presented evidence or argument concerning infringement under Van-Packer's construction of "thermal spacers" rejected by the district court or its new construction proffered to this Court, the district court has not considered infringement under either construction in the first instance, and it would, therefore, be inappropriate for this Court to reverse and find infringement under either construction as a matter of law. Thus, if this Court reverses the district court's construction

of "thermal spacers thermally isolating," then it should merely remand to the district court for further proceedings in light of the new construction as is this Court's routine procedure when revising a district court's claim construction. *See, e.g., Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 925 (Fed. Cir. 2021) ("Because the district court based its grant of summary judgment of noninfringement of the '420 patent on an erroneous construction, we vacate that judgment and remand."); *Phillips*, 415 F.3d at 1328 ("Because we disagree with the district court's claim construction, we reverse the summary judgment of noninfringement. In light of our decision on claim construction, it is necessary to remand the infringement claims to the district court for further proceedings.").

Van-Packer's reliance on *In re Lemay*, 660 F. App'x 919, 922 (Fed. Cir. 2016), that "an absence of evidence to consider on remand warrants reversal" is misplaced. (Bf. 19.) *Lemay* was an "appeal [of] the Final Written Decision of the United States Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB"), which affirmed in part an examiner's rejection of all claims" in a pending patent application. *Id.* at 920. Given the procedural posture of that case, the court held that "[w]hen no

substantial evidence supports the PTAB's findings, we may reverse its findings without remanding the matter." *Id.* at 922 (citations omitted). This appeal is not of a PTAB proceeding. This appeal arises from district court litigation in which two adversarial litigants have the right to present evidence and argument on all issues. Thus, *Lemay* is inapposite to the facts and procedural posture of this case, and Van-Packer has not cited a single case in which this Court reversed a district court's claim construction and ordered entry of summary judgment on infringement based on a construction for which the parties have not had an opportunity to present evidence and argue below.

## <u>CONCLUSION</u>

For the foregoing reasons the district court's judgment of infringement should be affirmed.

Date: July 3, 2024                    Respectfully submitted,

/s/ Chad E. Nydegger
_____
CHAD E. NYDEGGER
BRIAN N. PLATT
RYAN C. MORRIS
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
*Attorneys for Appellee DuraSystems Barriers, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I caused the foregoing BRIEF FOR APPELLEE DURASYSTEMS BARRIERS, INC. to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  I certify service was therefore accomplished by the CM/ECF system on all participants in the appeal.

DATED: July 3, 2024

*/s/ Chad E. Nydegger*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed.R.App.P. 32(a)(7)(C) and Fed.R.App.P. 32(g), I certify that according to the word-processing system used in preparing it, the foregoing BRIEF FOR APPELLEE DURASYSTEMS BARRIERS, INC. is 9,958 words in length, excluding those portions exempted by Fed.R.App.P. 32(f) and Fed.Cir.R. 32(b), and therefore complies with the type-volume limitation set forth in Fed.Cir.R. 32(a).

DATED: July 3, 2024

*/s/ Chad E. Nydegger*
CHAD E. NYDEGGER