No. 2024-1537

# United States Court of Appeals for the Federal Circuit

DURA SYSTEMS BARRIERS, INC.,
*Plaintiff-Appellee*

v.

VAN-PACKER CO., JEREMIAS, INC.
*Defendants-Appellants*

Appeal from the United States District Court for the Central District of Illinois in No. 1:19-cv-01388-SLD-JEH, Judge Sara Darrow.

**DEFENDANTS-APPELLANTS VAN-PACKER CO. AND JEREMIAS, INC.'S REPLY BRIEF**

**K&L GATES LLP**

George C. Summerfield
Nathan J. Fuller
70 W. Madison Street
Suite 3300
Chicago, IL 60602
(312) 372-1121

Courtney A. Neufeld
925 Fourth Avenue
Suite 2900
Seattle, WA 98104
(206) 623-7580

*Attorneys for Defendants-Appellants*

July 24, 2024

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

    I.    The District Court's Construction Improperly Renders "Thermal" Superfluous...................................................................................................2

    II.    The Accused Products Do Not Satisfy The "Thermal Spacers Thermally Isolating" Limitation ...................................................................................7

        A.  As Properly Construed, The Accused Products Are Not "Thermal Spacers"..................................................................................................7

        B.  Even Under The District Court's Construction, The Accused Spacers Do Not Infringe ...............................................................................8

    III.   Reversal Is The Proper Remedy ...............................................................12

CONCLUSION ..................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Edwell Personal Care Brands, LLC v. Munchkin, Inc*,
   998 F.3d 917 (Fed. Cir. 2021) ...................................................................... 12

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) ....................................................................... 7

*Intel Corp. v. Qualcomm Inc.*,
   21 F.4th 801 (Fed. Cir. 2021) ................................................................. 1, 3, 6

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ....................................................................... 4

*Power Mosfet Techs. L.L.C. v. Siemens AG*,
   378 F.3d 1396 (Fed. Cir. 2004) ....................................................................... 3

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*,
   820 F.3d 419 (Fed. Cir. 2016) ......................................................................... 3

*World Class Tech. Corp. v. Ormco Corp.*,
   769 F.3d 1120 (Fed. Cir. 2014) ....................................................................... 6

## INTRODUCTION

The issues on appeal have distilled to one—does the term "thermal," as modifying "spacers," have meaning? The canons of claim construction say it must. Appellant, the only party proposing such a meaning, proposes that a "thermal spacer" is a spacer having ***a specific thermal isolation property***.

The district court, with the full-throated backing of Appellee, construed the limitation "thermal spacers thermally isolating" together, finding along the way that "thermal spacers need not have a specific ***thermal property***." Appx22 (emphasis added); *see also* Appx23 ("Just because thermal spacers thermally isolate does not mean they must have a specific thermal isolation property."). Such a finding is contrary to logic, grammar, ***and*** the canon of claim construction counseling against rendering a term superfluous. *See, e.g., Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) (*citing Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017)).

As a subsidiary matter, and as will be discussed in detail herein, the district court's claim construction effectively eliminates the need to determine for infringement purposes whether the spacers themselves play ***any*** role in thermal isolation. To wit, Appellee's position is, and has been: 1) there is thermal isolation; 2) there are spacers; and 3) the "thermal spacers thermally isolating" limitation is therefore satisfied. The district court adopted that logic in granting summary

1

judgment of infringement to Appellee over evidence that the accused spacers are antithetical to thermal isolation.

Once the term "thermal," as modifying "spacers," is given discrete meaning, as it must be, the house of cards on which summary judgment rested falls. The Accused Products do not include *thermal* spacers. Further, as a result, the metal spacers in the Accused Products are not the agent of thermal isolation, as required by the claims. Rather, the air and insulation which fill the voids defined by the spacers, but which are *not* part of the spacers, provides thermal insulation in the Accused Products. Thus, the district court's claim construction was in error, as was summary judgment of infringement based upon that construction.

## ARGUMENT

**I. The District Court's Construction Improperly Renders "Thermal" Superfluous**

One need not guess as to the district court's regard for the term "thermal" in the limitation "thermal spacer thermally isolating." The court made clear in issuing its construction that "thermal spacers need not have a specific *thermal property*." Appx22 (emphasis added); *see also* Appx23 ("Just because thermal spacers thermally isolate does not mean they must have a specific thermal isolation property."). In other words, the limitation "thermal spacer thermally isolating" would have the same meaning, according to the district court's logic, with or without the word "thermal" therein. The district court provided *no* justification for rendering

2

"thermal" so blatantly superfluous in contravention of authority disfavoring such a construction. *See, e.g., Intel*, 21 F.4th at 810.

Rather than identifying any discrete meaning to "thermal" in the district court's construction, Appellee simply accepts that rendering that term superfluous is fine. *See* Red Br., 36 (citing *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB,* 820 F.3d 419, 429 (Fed. Cir. 2016); *Power Mosfet Techs. L.L.C. v. Siemens AG,* 378 F.3d 1396, 1410 (Fed. Cir. 2004)). However, the two decisions cited by Appellee on this point begin with the proposition that "interpretations that render some portion of the claim language superfluous are disfavored." *SimpleAir,* 820 F.3d at 429 (quoting *Power Mosfet*, 378 F.3d at 1410). Further, in *SimpleAir*, the court ultimately concluded that the limitations "data feed" and "data channel" have different meanings, which **supports** ascribing discrete meaning to each claim term, as Appellants urge here.

In *Power Mosfet*, while the court did determine that adding the term "directly" to a dependent claim did not alter the scope claimed in the corresponding independent claim, it did so only after it determined that "neither the plain meaning nor the patent itself commands a difference in scope between two terms." *Power Mosfet*, 378 F.3d at 1410 ("the addition of the term 'directly' to an existing requirement of physical contact imposes no additional restrictions on the phrase. Whether the alternating semiconductor 'contact[s] . . . directly to form a

3

second interface,' or merely 'contact[s] . . . to form a second interface,' a physical boundary must be formed.").

Here, the district court had to ***ignore*** intrinsic evidence to ascribe no meaning to the term "thermal," beginning with the way that term appears in the claims themselves. As this Court noted in the oft-cited *Phillips* decision, the limitation "***steel*** baffles" "strongly implies that the term 'baffles' does not inherently mean objects made of steel." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (emphasis added). By analogy, the limitation "thermal spacers" strongly implies that the term "spacers" does not inherently mean "thermal."

Further, the specification of the patent-in-suit, *i.e.,* the single best guide to the meaning of claims, consistently uses the term "thermal spacer(s)," and never "spacer(s)" alone, implying a lack of interchangeability between those terms, and supporting an incremental meaning for "thermal." Blue Br., 12–13. In contrast, the portion of the specification cited by Appellee (Appx125, 7:48–50) references the "thermally isolating" properties of a "thermal gasket," which is an entirely different component in the duct assembly, and therefore unhelpful in construing "thermal spacers." *See* Appx125, 7:48–50 ("a thermal gasket indicated by reference 724 in FIG. 9 can be included to thermally isolate the joint encasement sections 720 from the outer casing panel 310.").

The prosecution history clearly supports ascribing meaning to "thermal," as

4

the applicant for the patent-in-suit stated: "The term 'thermal' in the context of the subject application means and refers to '***specific thermal properties***,' namely, thermally isolating." Appx438 (emphasis added). The applicant made this statement when the Examiner rejected the applicant's initial claim language, finding "the [claimed] spacers are only there to keep duct components in a spaced relationship ***without requiring any specific thermal properties***." Appx422 (emphasis in original). Thus, in order to overcome the Examiner's rejection, the applicant distinguished its "thermal spacers" from "spacers" in the prior art based on the claimed thermal spacers having "specific thermal properties," namely, being thermally isolating. Appx438. These statements provide perhaps the best insight into the importance placed on the term "thermal" as modifying "spacers" in the subject claims, and make it entirely inappropriate to render that term superfluous via claim construction.

Appellee, for its part, argues that the "prosecution history establishes that any . . . redundancy" is proper. Red Br. at 36. The portion of the prosecution history cited by Appellee actually explains that "the arrangement of the inner duct liner, the outer casing, the insulation material in the void and the ***thermal*** spacers is configured to prevent the thermal transfer of heat." Appx439 (emphasis added). If, as Appellee suggests, the prosecution history truly supported superfluidity, there would have been no need to specify that "thermal" spacers contribute to the prevention of

5

thermal heat transfer. That the claims were amended to add this limitation specifically to overcome the prior art belies the notion that "thermal" is superfluous. In any event, the prosecution statement regarding the importance of "thermal" spacers clearly disclaims any spacer that does not have the specific thermal isolating property. *See, e.g.*, *World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1123 (Fed. Cir. 2014) ("the patentee can, by acting with sufficient clarity, disclaim such a plain meaning or prescribe a special definition").

Finally, Appellee attempts to distinguish *Intel* because, allegedly dissimilar from *Intel*, the district court's construction below ascribes "thermal restrictions on the spacers" (*i.e.*, a limit on the amount of heat conducted through the components). Red Br., 40. However, as explained in detail herein the district court's construction does not explain what about the claimed spacer itself (as opposed to myriad other components taught and claimed in the patent-in-suit) limits heat. Because the claims specifically recite **thermal** spacers, *Intel* cautions against any construction that would include the use of generic spacers in a duct assembly.

Accordingly, a thermal spacer possesses a specific thermal property, and it is that thermal property that distinguishes a thermal spacer from a generic spacer. Thus, Appellants have proposed construing "thermal spacers" as "a spacer having a

specific thermal isolation property."[1] At the very least, that notion of a thermal property ***must*** be imputed into the construction of the term "thermal" as modifying "spacer."[2] That the district court did not do so was error.

## II. The Accused Products Do Not Satisfy The "Thermal Spacers Thermally Isolating" Limitation

### A. As Properly Construed, The Accused Products Are Not "Thermal Spacers"

As discussed in detail above, the claimed "thermal spacers" must themselves have a specific thermal property, as contrasted with a generic spacer. While Appellee argues that the accused spacers are "designed" or "specially shaped" to limit the transfer of heat, it concurrently admits that the negative space within the holes or voids defined by such spacers is what actually limits heat transfer between the inner liner and the outer casing—not the spacers themselves. *See* Red Br. at 54 (stating

---

[1] In response to Appellee's waiver argument (Red Br. at 40–42), Appellants disagree that there is a substantial difference between "specific thermal property" and "specific thermal isolation property" given the applicant's statements in the prosecution history. However, to resolve Appellee's concerns, Appellants urge this Court to adopt a construction of "thermal spacers" that recognizes that they must possess a "specific thermal isolation property." To the extent this does not resolve any issues related to waiver, Appellants request that this Court exercise its discretion to deviate from the general rule of waiver given that this is not a new issue on appeal and the issue was fully briefed by the parties in the district court below. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1322–23 (Fed. Cir. 2020).

[2] To the extent that all of this intrinsic evidence regarding the importance of "thermal" is somehow insufficient, Appellee's owner confirmed that "thermal spacers" means "a spacer with a specific thermal property" during his deposition. *See* Appx558.

perforations act as a heat sink). Appellee attempts to reconcile this obvious inconsistency by arguing that the **configuration** in which the accused spacers are deployed reduces the amount of heat. *See* Appx1798. This is a far cry from the spacers themselves having a specific thermal isolation property.

In any event, Appellee's struggle in cobbling together an infringement theory is hardly surprising, given that the accused spacers are made of metal—a known thermal **conductor**. Appx559; Appx 1798. Appellee's expert actually agreed that the accused spacers *increase* the flow of heat, *i.e.*, a characteristic antithetical to the claimed "thermal spacers." Appx2783 (citing Appx3053–54 at 214:14–215:10, Appx2929–30 at 90:7–91:14); *see also* Appx2791–92. Therefore, the accused spacers do not have a specific thermal isolation property and cannot satisfy the limitation "thermal spacers thermally isolating." Therefore, summary judgment of non-infringement was granted in error.

### B.   Even Under The District Court's Construction, The Accused Spacers Do Not Infringe

While the district court reasoned as part of claim construction that "thermal spacers need not have a specific thermal property" (*see* Appx22), it also made clear that the "thermal spacers" themselves, and not some other componentry, must thermally isolate (Appx22; Appx29), even noting that such requirement was "supported by the prosecution history." Appx22. Appellee agreed that the district court's construction requires that the "thermal spacers" must themselves thermally

8

isolate. *See* Red Br. at 14.

On summary judgment, the district court clarified its claim construction ruling to provide that "thermal spacers may increase the transfer of heat to certain portions of the outer casing but still 'limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating testing.'" *See* Appx67. Arguably, this clarification bolsters the conclusion that the district court's construction read "thermal" out of the claim.

In any event, even under this construction, there is no evidence that the accused spacers, as opposed to other components limit the amount of conducted heat *at all*. Rather, Appellee itself admits that the ***perforations*** defined by the accused spacers comprise the heat sink (the thing that limits conducted heat). *See* Red Br. at 54. Even if one were to agree with the district court's clarified construction, and a spacer that actually *increases* conducted heat in certain aspects could still correspond to the claimed "thermal spacers," there is ***no*** evidence that the accused spacers themselves, as opposed to other components, limit the amount of conducted heat at all. Neither the Appellee nor the district court even posits a guess as to what in the accused spacers themselves would result in such a limiting effect.

At most, on summary judgment, the district court found that spacers with perforations or holes limit the amount of heat, without distinguishing between the spacers and the holes they define. Appx69. This, however, is a key distinction in this

9

context, as the holes are filled with "ceramic fiber insulation" (Blue Br. at 15 (citing Appx2241)), while the spacers actually conduct heat. Appx559; Appx 1798; Appx2791–93 (citing Appx2828–29).

The only way the district court could have made this finding was by adopting Appellee's implicit reasoning that the holes form part of the spacer, and the combination collectively limit conducted heat. There was no evidence below to support the conclusion that the holes are part of the accused spacers. In fact, Appellee's own expert ***excluded*** the holes from the accused spacers in depicting what was, in fact, accused. *See* Blue Br. at 16. And, in depicting in green below what was indisputably the accused spacers, the Appellee omitted the holes defined by the spacer, and, more importantly, the insulation filling those holes, *i.e.*, the feature actually responsible for limiting conductive heat transfer.



*See* Red Br. at 49.

Finally, after everything, Appellee attempts to turn the burden of proof on its

10

head, arguing "[n]owhere does *Van-Packer* make any argument or ***present any evidence*** that its thermal spacers conduct sufficient heat through them to create fail points during fire rating testing." Red Br. at 55 (emphasis added). Appellee was granted summary judgment of infringement below, meaning that it was incumbent on ***it*** to present evidence supporting its infringement claim, as well as to show that such evidence was unrefuted. As has been discussed at length herein, there is ***no*** evidence that the accused spacers themselves, as opposed to other components, limit conductive heat transfer between the inner liner and the outer casing. In fact, the ***only*** evidence plainly demonstrates that conductive heat transfer is limited ***in spite*** of such spacers, given the unrefuted evidence that they conduct heat and increase the flow of heat between the inner liner and outer casing.

In short, the limitation at issue specifies "thermal spacers thermally isolating." Given the plain language of this limitation, the claims require the thermal spacers provide thermal isolation—not other components, *e.g.,* the ceramic fiber insulation. Yet, the latter is precisely what we have here with the accused spacers. As such, those spacers in the Accused Products do not meet the limitations of the claims of the patent-in-suit, and it was error for the district court to grant summary judgment

11

to the contrary.[3]

### III.     Reversal Is The Proper Remedy

The Court has discretion to reverse the district court's finding of infringement. *See Simo Holdings Inc. v. Hong Kong uCloudLink Network Tech. Ltd.* (reversing grant of summary judgment of non-infringement). DuraSystems has put forth no evidence that Van-Packer would infringe under Van-Packer's construction of "thermal spacers thermally isolating." Nor can it put forth such evidence because the accused spacers are made of metal, a known thermal conductor, as discussed above. DuraSystems cites to *Edwell Personal Care Brands, LLC v. Munchkin, Inc.*, where the Federal Circuit remanded the matter back to the district court because the non-movant put forth evidence, including deposition testimony, that would create a genuine dispute of material fact. 998 F.3d 917, 925 (Fed. Cir. 2021). That is not the case here. Because there is ***no*** evidence that the Accused Products satisfy the "thermal spacers thermally isolating" claim limitation as construed by Appellant, this Court can, and should, reverse the district court's finding of no infringement without the need for remand.

---

[3] Contrary to Appellee's contention, Appellants made this same argument regarding non-infringement below (*see, e.g.,* Appx66) and, has not "waived all arguments on appeal that its Accused Products do not infringe." *See* Red Br. at 47.

## CONCLUSION

For the foregoing reasons, the district court's decision should be reversed.

Dated: July 24, 2024

Respectfully submitted,

By: /s/ George C. Summerfield
George C. Summerfield
Nathan J. Fuller
K&L Gates LLP
70 W. Madison Street
Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000

Courtney A. Neufeld
K&L Gates LLP
925 Fourth Avenue
Suite 2900
Seattle, WA 98104
Tel.: (206) 623-7580

*Attorneys for Defendants-Appellants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2024, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system and therefore served on all counsel of record.

/s/ George C. Summerfield
George C. Summerfield
